IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT AND JURY DEMAND** |
| MEIJER, INC. | ) ) | |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Gary Simpkins. As alleged with greater particularity in paragraph 12 below, the Commission alleges that Defendant, Meijer Inc., violated the Americans with Disabilities Act by denying Simpkins a reasonable accommodation and demoting him because of his disability.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan, Southern Division.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant, Meijer Inc. (the "Employer"), has continuously been a Michigan corporation doing business in the State of Michigan

and the Township of Commerce and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42. U.S.C. §§2000e(g) and (h).

6. At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Gary Simpkins filed a charge with the Commission alleging violations of the ADA by Defendant Employer.

8. On September 21, 2018, the Commission issued to Defendant Employer a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant Employer to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant Employer to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. On March 25, 2019, the Commission issued to Defendant Employer a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least November 2016, Defendant Employer has engaged in unlawful employment practices in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a).

    a. Simpkins is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Simpkins suffers from psoriatic arthritis, which causes inflammation and pain in his joints. Simpkins is substantially limited in his immune and musculoskeletal functions, and in his ability to stand, reach, pull and shift his hips.

    b. Simpkins has worked for Defendant Employer at the Commerce Township store since he was hired in 1992.

    c. In the five years prior to November 2016, Simpkins worked primarily as a cashier in the U-Scan self-service area where customers ring

up their own purchases.

    d.    During that five-year period, Simpkins worked in the U-Scan area because of his psoriatic arthritis.

    e.    Nevertheless, Simpkins occasionally filled in at the full-service cashier position when there was a demand for it and did so without difficulty.

    f.    Simpkins also had experience working as a cashier in the store's gas station, which is in a separate building on the store's premises.

    g.    In November 2016, a new store director and customer service line leader began working at the Commerce Township store.

    h.    The new line leader removed Simpkins from his position as a cashier in the U-scan area, claiming that it was neither efficient nor fair to other employees to allow Simpkins to remain posted in the U-scan area.

    i.    In January and February 2017, Simpkins submitted to Defendant Employer two doctor's notes explaining his psoriatic arthritis and his physical limitations.

    j.    In March 2017, Defendant conducted a meeting with Simpkins and his union representative. Present for Defendant were the store director, the customer service line leader, an HR specialist, and the ADA adjuster.

    k.    During the meeting, in response to Simpkins' doctor's notes,

    Defendant proposed that Simpkins be re-assigned to a part-time greeter position, which involved a cut in hourly pay as well as a loss of benefits. To avoid part-time status and a decrease in his hourly wage and benefits, Simpkins proposed several alternative accommodations, including using a stool for the checkout lane, working in the gas station, resuming his prior U-Scan position, working at the customer-service desk, and offered to go to an open position at a different store.

    l.    Defendant refused these proposed accommodations and was unwilling to try any on a trial basis.

    m.    Defendant told Simpkins that if he did not accept the lower paying, part-time greeter position his employment would be terminated.

    n.    Simpkins reluctantly went to work as a part-time greeter, which meant losing $2.35 per hour and left him concerned regarding the loss of his health benefits, seniority, and retirement benefits. Three weeks later, he was increased to full-time hours, but the pay disparity continues to date.

13.    The effect of the practices complained of in paragraph 12 above has been to deprive Simpkins of equal employment opportunities and otherwise adversely affect his status as an employee because of his disability.

14.    The unlawful employment practices complained of in paragraph 12 above were intentional.

15. The unlawful employment practices complained of in paragraph 12 were done with malice or with reckless indifference to the federally protected rights of Simpkins.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from refusing to provide reasonable accommodations to qualified employees with disabilities.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make Simpkins whole by providing appropriate back pay, including the restoration to the pay rate he would have had but for the discrimination, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant Employer to make Simpkins whole by providing compensation for past and future pecuniary losses resulting from the unlawful

employment practices described in paragraph 12 above in amounts to be determined at trial.

    E.    Order Defendant Employer to make whole Simpkins by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraph 12 above, including but not limited to emotional pain, suffering, inconvenience and humiliation in amounts to be determined at trial.

    F.    Order Defendant Employer to pay Simpkins punitive damages for its malicious and reckless conduct, as described in paragraph 12 above, in amounts to be determined at trial.

    G.    Grant such further relief as the court deems necessary and proper in the public interest.

    H.    Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

KENNETH L. BIRD
Regional Attorney

        OMAR WEAVER
        Supervisory Trial Attorney

        <u>/s/ Dale Price (P55578)</u>
        Senior Trial Attorney
        Detroit Field Office
        477 Michigan Ave., Room 865
        Detroit, MI 48226
        (313) 226-7808
        Dale.Price@eeoc.gov

Dated: August 6, 2019